

**FILED**

**November 18, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 11:41 AM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| SISOUPHAHN THYSAVATHDY,<br>      Employee,<br>v.<br>BRIDGESTONE AMERICAS TIRE<br>OPERATIONS,<br>      Employer,<br>And<br>OLD REPUBLIC INS. CO./<br>SEDGWICK CMS<br>      Insurance Carrier/TPA. | Docket No.: 2015186647<br><br>State File Number: 87347 2014<br><br>Judge Audrey A. Headrick |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS
## (RECORD REVIEW ONLY)

---

This claim came before the Court upon a Request for Expedited Hearing filed by the employee, Sisouphahn Thysavathdy. This request is for an on-the-record determination of Mr. Thysavathdy's claim for medical and temporary disability benefits. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Thysavathdy is likely to prevail at a hearing on the merits. Based on the evidence before it at this time, the Court finds Mr. Thysavathdy is unlikely to succeed in proving causation at a Compensation Hearing and denies his request for temporary disability and medical benefits.[1]

### History of the Claim

Mr. Thysavathdy is a fifty-four-year-old resident of La Vergne, Rutherford County, Tennessee. (T.R. 1.) He seeks medical and temporary disability benefits for a bilateral shoulder injury that allegedly occurred on July 15, 2014, while pulling tires as a factory worker at Bridgestone. *Id.*

On September 11, 2014, Mr. Thysavathdy sought treatment at Walgreens walk-in clinic regarding a cough. However, he also reported he "[w]orks at Bridgestone and pulls ties all day. Reports pain in the arm left [illegible] during a cough and right arm due to

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

overuse." (Ex. 1 at 2.) On September 24, 2014, Mr. Thysavathdy complained of shoulder pain to his cardiologist, Dr. Steven Humphrey. He told Dr. Humphrey that "[s]ince [Mr. Thysavathdy] returned to work he has had severe left upper extremity and axillary pain adjacent to the side of ICD implant." (Ex. 1 at 4.) Dr. Humphrey ordered x-rays for Mr. Thysavathdy's chest and left upper extremity and instructed him to return to see him in a week. *Id.* The left shoulder x-ray taken on September 24, 2014, indicated "mild degenerative change."

Mr. Thysavathdy subsequently gave notice to Bridgestone of an alleged left-shoulder injury.[2] On November 19, 2014, he selected Dr. Vincent Novak with Premier Orthopaedics from the panel of physicians provided by Bridgestone. On December 29, 2014, Mr. Thysavathdy saw Dr. Vincent Novak for left shoulder pain with his son in attendance. (Ex. 2 at 002.) Dr. Novak noted, "[o]verall, the patient appears to verbally communicate effectively." *Id.* The case manager attending the appointment, Laila Dickerson, stated Mr. Thysavathdy did not report the injury to Bridgestone until November 2014. *Id.* Ms. Dickerson also told Dr. Novak that Bridgestone terminated Mr. Thysavathdy in September 2014 due to "attendance issues." *Id.*

During the December 29, 2014 appointment, Mr. Thysavathdy attributed his left shoulder pain to his job at Bridgestone as a material handler. *Id.* He told Dr. Novak he pulled tires eight to twelve hours a day. *Id.* Dr. Novak noted "[Mr. Thysavathdy] reports to me complaining of some slow progressive worsening of left shoulder/axillary pain over the last to [sic] 6 months with no known acute injury." *Id.* Mr. Thysavathdy estimated the date of onset as "July 15, 2014, though again he denies any specific acute injury (no specific mechanism, location, specific date/time)." *Id.* After reviewing Mr. Thysavathdy's past medical records, primarily Dr. Steven Johnson's records, and evaluating him, Dr. Novak diagnosed him with "[p]ossible bursitis, possible sprain/strain, possible internal derangement (such as rotator cuff/labral tear) . . . [p]ossible referred pain from the left chest/implanted ICD prior." *Id.* at 003. He ordered physical therapy, prescribed medication, assigned restrictions, and discussed the possibility of ordering a left-shoulder CT arthrogram. *Id.*

In his December 29, 2014 office note, Dr. Novak addressed causation. He opined: "[r]egarding causation, I am unable to identify any specific work-related injury to the patient's left shoulder—specifically as [Mr. Thysavathdy] is unable to identify any specific date/time, location or a specific/acute injury/mechanism, which precipitated his pain/problems. I understand and appreciate that activities (including work) make his pain worse."

On January 20, 2015, Bridgestone filed a Notice of Controversy. (Ex. 3.)

---

[2] The parties did not submit a First Report for consideration, so the exact date Mr. Thysavathdy provided notice is unclear.

2

On March 11, 2015, Mr. Thysavathdy saw Dr. Roderick Vaughan with Tennessee Orthopaedic Alliance for his left shoulder and told him he received a Notice of Controversy. (Ex. 1 at 11.) Mr. Thysavathdy indicated his "symptoms began in mid July when he was pulling a tire at work." *Id.* Dr. Vaughan diagnosed him with "[l]eft shoulder pain; rotator cuff syndrome with radiographic evidence of moderate acromioclavicular and mild glenohumeral arthritis and clinical evidence of adhesive capsulitis." *Id.* He noted he discussed with Mr. Thysavathdy "the natural history of these assessments and potential for other occult internal derangement including but not limited to rotator cuff tearing." *Id.* at 12. Dr. Vaughan gave Mr. Thysavathdy a subacromial injection and discussed the option of referring him for a CT arthrogram. *Id.*

On April 13, 2015, Mr. Thysavathdy returned to see Dr. Vaughan. *Id.* at 14. He reported only a 5% improvement in his left-shoulder pain. *Id.* Mr. Thysavathdy also reported that his cardiologist released him to return to work. *Id.* However, he told Dr. Vaughan Bridgestone terminated his position. *Id.* Due to Mr. Thysavathdy's continued symptoms, Dr. Vaughan ordered a left-shoulder CT arthrogram. *Id.*

On April 27, 2015, Mr. Thysavathdy followed up with Dr. Vaughan regarding his CT arthrogram results from April 16, 2015. *Id.* at 17. Dr. Vaughan stated the findings indicated "mild chronic thickening of the supraspinatus tendon," and the findings were otherwise "within normal [range]." *Id.* Mr. Thysavathdy told Dr. Vaughan "his injury occurred acutely with a moment of pulling a tire." *Id.*

On April 28, 2015, Dr. Vaughan responded to a causation letter dated April 8, 2015, from counsel for Mr. Thysavathdy. *Id.* at 19. He opined that, "[a]lthough Mr. Thysavathdy's pacemaker placement may possibly result in referred pain to the shoulder, I feel that he does have a problem specific to the shoulder." *Id.* Due to Mr. Thysavathdy's pacemaker, Dr. Vaughan stated it precluded an MRI scan. *Id.* Although the CT arthrogram did not show full-thickness rotator cuff tear, Dr. Vaughan opined Mr. Thysavathdy had "evidence of a rotator cuff syndrome with associated degenerative joint disease, evidence of adhesive capsulitis, and potential for a neurologic etiology." *Id.*

In his April 28, 2015 response, Dr. Vaughan addressed causation of Mr. Thysavathdy's left-shoulder condition. He opined as follows:

> In summary, I estimate that Mr. Thysavathdy's degenerative joint disease is pre-existing; however, he has indicated the onset of his symptoms with a specific pulling event. As such, there is potential for partial rotator cuff tear as well as a reasonable probability that a strain event may contribute to adhesive capsulitis and/or a regional pain syndrome. I estimate it is probable that in correlation with Mr. Thysavathdy's provided history and findings that his shoulder syndrome is work-related.

3

*Id.* at 19-20.

Mr. Thysavathdy asks the Court to order medical benefits and temporary disability benefits. Bridgestone asks the Court to deny Mr. Thysavathdy's claim based upon the lack of medical causation pursuant to Tennessee Code Annotated section 50-6-102(13)(E) (2015). Mr. Thysavathdy's undisputed average weekly wage was $675.52, which equates to a weekly compensation rate of $450.37.

On July 13, 2015, Mr. Thysavathdy filed a Petition for Benefit Determination seeking medical and temporary disability benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on August 3, 2015. (T.R. 2.) Mr. Thysavathdy filed a Request for Expedited Hearing based upon the record on September 11, 2015. (T.R. 3.) On September 25, 2015, the Chief Judge transferred this case to the undersigned Workers' Compensation Judge. (T.R. 4.) On October 16, 2015, Bridgestone filed a Motion for Evidentiary Hearing and a Motion to Strike Medical Records. (T.R. 5 and 6.) On October 20, 2015, this Court entered an Order Denying Bridgestone's Motion for Evidentiary Hearing and Motion to Strike Medical Records. (T.R. 7.)

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

***Mr. Thysavathdy Failed to Demonstrate a Likelihood of Success on the Merits at Trial***

In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

Likewise, an aggravation of a pre-existing condition is compensable on if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13)(A) (2014). The legislature defined "[s]hown to a reasonable degree of medical certainty" to mean the physician must opine "it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2014). Further, the panel physician's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E) (2014).

The records submitted document that Dr. Vincent Novak is a panel-selected physician. Dr. Roderick Vaughan began treating Mr. Thysavathdy after he received the Notice of Controversy filed by Bridgestone. Pursuant to Tenn. Code Ann. § 50-6-102(13)(E) (2014), Dr. Novak's opinion is entitled to the presumption of correctness on the issue of causation.

Regarding the date of his alleged injury, Mr. Thysavathdy estimated for Dr. Novak the date of onset as "July 15, 2014, though again he denies any specific acute injury (no specific mechanism, location, specific date/time)." (Ex. 1 at 002.) Dr. Novak diagnosed Mr. Thysavathdy with "[p]ossible bursitis, possible sprain/strain, possible internal derangement (such as rotator cuff/labral tear) . . . [p]ossible referred pain from the left chest/implanted ICD prior." *Id.* at 003. Further, Dr. Novak addressed causation opining: "I am unable to identify any specific work-related injury to the patient's left shoulder— specifically as he is unable to identify any specific date/time, location or a specific/acute injury/mechanism, which precipitated his pain/problems. I understand and appreciate that activities (including work) make his pain worse." *Id.* at 004.

When Mr. Thysavathdy saw Dr. Vaughn, he told him his "symptoms began in mid-July when he was pulling a tire at work." (Ex. 1 at 11) The left-shoulder CT arthrogram did not show full-thickness rotator cuff tear. *Id.* Regarding medical causation, Dr. Vaughan opined:

Mr. Thysavathdy's degenerative joint disease is pre-existing; however, he has indicated the onset of his symptoms with a specific pulling event. As such, there is potential for partial rotator cuff tear as well as a reasonable probability that a strain event may contribute to adhesive capsulitis and/or a regional pain syndrome. I estimate it is probable that in correlation with Mr. Thysavathdy's provided history and findings that his shoulder syndrome is work-related.

*Id.* at 19-20.

Regardless of whether the Court relies upon Dr. Novak's opinion that he could not identify any specific work-related injury or Dr. Vaughan's opinion that Mr. Thysavathdy's left-shoulder syndrome is work-related, neither opinion satisfies the requirement of Tennessee Code Annotated section 50-6-102(13) (2014). Dr. Novak opined he was unable to identify any specific work-related injury to Mr. Thysavathdy's left shoulder. Although Dr. Vaughan stated that Mr. Thysavathdy's left-shoulder condition is work-related, he prefaced his opinion with such terminology as "potential;" "reasonable probability;" "may contribute;" and, "I estimate it is probable."

Essentially, the same statutory standard applies whether an injury is an acute, specific injury or an aggravation of a pre-existing injury. Either way, the injury must have arisen "primarily out of and in the course and scope of employment." *Id.* Additionally, an injury causes the need for medical treatment within a reasonable degree of medical certainty if "*in the opinion of the physician*, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2014) (emphasis added). In Mr. Thysavathdy's case, the Court finds Dr. Vaughan's opinion falls within the realm of "speculation or possibility" and is insufficient at this time to rebut the presumption of correctness of Dr. Novak's opinion. *Id.* Therefore, Mr. Thysavathdy has not demonstrated that he is likely to prevail at a hearing on the merits.

1. This matter is set for an Initial (Scheduling) Hearing on January 20, 2016, at 10:00 a.m. Eastern Time.

2. **Unless interlocutory appeal or the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau of Workers' Compensation by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

6

3. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email to WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

IT IS SO ORDERED.

**ENTERED this the 18th day of November, 2015.**

_Audrey Headrick_
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set on January 20, 2016, at 10:00 a.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or

7

other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Table of Contents of Medical Records filed by Mr. Thysavathdy
2. Chronological Table of Contents filed by Bridgestone
3. Notice of Denial of Controversy
4. Wage Statement
5. Panel

Technical record:
1. Petition for Benefit Determination, filed July 13, 2015
2. Dispute Certification Notice, filed August 3, 2015
3. Request for Expedited Hearing, filed September 11, 2015
4. Transfer Order, filed September 25, 2015
5. Motion for Evidentiary Hearing, filed October 16, 2015
6. Motion to Strike Medical Records, filed October 16, 2015
7. Order Denying Bridgestone's Motion for Evidentiary Hearing and Motion to Strike Medical Records, filed October 20, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 18th day of November, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Steve C. Norris | | | | | x | steve@stevecnorris.com |
| Leslie F. Bishop | | | | | x | lbishop@lewisthomason.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov